The case today is 13-1633 United States v. Jose Rodriguez and number 13-1657 United States v. Joel Santini-Mendez Thank you Good morning Ms. Bonilla Good morning your honors Good morning Madam Clerk Victoria Bonilla on behalf of Mr. Santini-Mendez May it please the court Mr. Santini-Mendez was convicted on count three of the indictment of possessing a firearm in furtherance of a drug trafficking crime He was convicted as an aider and an abetter, not as a co-conspirator As an aider and abetter, knowledge is extremely important because the mens rea is higher than it is for a vicarious liability standard It is so high that it is practical certainty, knowledge equates practical certainty It's practical certainty that tells us through Vasquez Castro that it is actually actual knowledge So from Vasquez Castro we learn that those words practical certainty are actual knowledge And now from the United States Supreme Court under Rosamond, Justice Kagan has told us that that knowledge has got to be advanced knowledge Advanced knowledge meaning prior to commencing the criminal activity And as it's stated in that opinion it is to give the opportunity for that individual to withdraw from that criminal enterprise, that criminal endeavor Counsel is it your position when you say advanced knowledge is required Is it your position that the government would have to prove that before your client entered the vehicle with the co-defendant That he had knowledge that the co-defendant had the gun, is that what you mean by advanced knowledge? Yes your honor because the crime charged aside from the drug activity that is not in question in this appeal Is the use of the firearm in furtherance of a drug activity In that case why wouldn't it suffice if as they are riding in the vehicle together A jury could conclude that your client knew that the co-defendant had the gun in his possession Why wouldn't that knowledge meet the element of the crime? You know knowledge can be established as soon as the individuals enter into a vehicle If there had been evidence presented to the jury that Mr. Santini Mendez knew that the co-defendant was carrying a firearm Well it's a circumstantial case, they're in close proximity, they're in the vehicle together The co-defendant has a very large gun under his shirt which may have been visible Typically often it is a circumstantial case like this But in order to even prove the circumstantial case your honor There has to be some evidence presented to the jury Not speculation that he may have seen the weapon But evidence that he saw it or somehow knew that it was there And there's nothing in this case that was presented Why would that be enough? Let's assume that Santini knew the gun was there I had thought that that would show knowledge of the gun But it wouldn't necessarily show that the gun was there for in furtherance of Santini's trafficking offense Well that goes to the third element which would be Can you speak about that? Yes your honor It refers to nexus There has to be a nexus between the drug activity and the use of that firearm To further, to promote, to enhance, to aid that drug activity We don't have that evidence here And as this court has said many occasions In furtherance of language is not an inelastic term So this court has instructed we need to look at subjective facts And we need to look at objective facts In this instance, in this case, I suggest to this court There are no subjective facts that establish that Mr. Santini Mendes Possessed, had the knowledge to possess that firearm And the knowledge to possess it with the intent to further the criminal activity You have to look at that nexus In this case through the objective standards that the government may present to you That were presented at trial Here, there are no observations that there was a drug transaction There is no evidence that that drug was carried when Mr. Santini Mendes purchased his drugs There is no evidence that the gun is going to be carried Or would have been carried in some future crime When Mr. Santini Mendes would sell his drugs There is no evidence Counsel, if I understand the situation I mean the charge is possession with intent to distribute As they are driving in that vehicle with drugs on their person With small baggies, with cash which is often present When folks are engaged in drug trafficking I mean the notion is that the gun And this is often the case, may be used protectively Drug trafficking is a dangerous business We have said in many of our cases that it's commonplace For those who are engaged in drug trafficking In this case, possession with intent to distribute We'll have a gun on the person of those involved for protective purposes And if it's there for that protective purpose Why would that be in furtherance of the drug trafficking? We have to be very careful This court has also said that mere presence is insufficient And we certainly don't want to be confusing Terms of vicarious liability with aiders and abettors We have to make very, very clear Two very different standards Whereas an aider and abettor The standard is much higher as to the knowledge element And as to the intent that's going to happen with that gun You need to know that there was a firearm There's no evidence presented that there was You need to know that that firearm has some nexus You were going to use it with that drug activity There is no evidence of that In all of the cases where this court has found such a nexus It is based on the objective There's a drug transaction There's wiretaps There's meets There's a drug buy setup Where, you know, police come in And other cases Warrants, searches of homes Do we know from the record why they were in the car together? No, Your Honor Do we know where they were going to? No, Your Honor Do we know they're going to a hardware store? They're at a hardware store? Or they were leaving hardware? This is a traffic stop This vehicle, as I understand from the record Was stopped because it had dark tinted windows And the officers who stopped the vehicle Believed that the tint on the windows was too dark That is the subject of the stop That's why this car is stopped Not because they made any observations Or anybody called and said Hey, there's drug dealers in this car There is no evidence Other than a traffic stop Where one individual admits to the police That he has bought these drugs Which, by the way, are sham drugs And they total 10.2 grams of sham cocaine And on his person he had $1,029 This is not our typical case Where we have thousands of dollars worth of drugs Where we have various vehicles Where there's buys being done And they're being observed And people are co-conspirators This is not that case Counsel, it really sounds like you're now making an argument That there was insufficient evidence To prove the drug trafficking offense To prove that there was possession with intent to distribute And obviously if that's the case Then there would be insufficient evidence To prove that a gun was being used in furtherance Of the underlying crime Isn't that what you're really arguing? That has been the argument all along, your honor, yes I thought your argument could succeed Even if you conceded That your client possessed the drugs Or the sham drugs And therefore, and his representations That he was engaged with intent to distribute Even if we assume that crime I thought the issue was Notwithstanding that To charge him with using the gun in furtherance of it Would require your client to have had some knowledge That the person carrying the gun Intended that gun to aid the trafficking That is correct, your honor We're not questioning at all The client's admissions to drugs Or that conviction It is, as I started He was convicted of using that firearm Possession of that firearm Of furtherance of a drug activity That is what we challenge here And I'm giving the court to consider That this is an aider and abetter To note the difference between Aiders and abetters and vicarious liability Because in the end, as this court has said Near presence is not enough You need, we need to look at all of the standards The facts, the specific facts  Could reach these conclusions That yes, he knew there was a weapon And yes, he was using that weapon To further his criminal activity And I suggest to this court That the evidence in this case Is totally lacking To form the knowledge To form the nexus between The drugs and the gun It's simply not there Especially when you compare it to other cases Where you do find it And that's very typical in the conspiracy cases, your honor Not aider abetters Thank you Good morning, your honors I'm attorney Michael Hasse And I represent Jose Luis Rodriguez Martinez He was the gentleman with the gun on his person And his co-defendant, unbeknownst to him Had some fake drugs in his possession Some cut for drugs, commonly People will take cut and mix it with cocaine to stretch it But certainly cut is not worth anything That's why they mix it with the cocaine Because cocaine is quite valuable And the drugs and the cuts Makes it spread out to more users And give them more doses to sell in the street So essentially the cut is a It's not worth anything It's certainly not worth carrying a gun around to protect They could always stop at the next store I think they sell the stuff at health food stores And then they could It's nothing that would have any impetus To have a gun to protect There's no knowledge There's no scienter There's no advanced mens rea That Mr. Rodriguez Martinez had With regard to the drugs secreted in his buddy's pocket It's pure speculation What the nexus between the drugs and the guns were Who knows But certainly Mr. Rodriguez Did not know That his co-defendant Santini Had these drugs from anything that's apparent on the record Maybe they were going to trade the guns The guns for some cocaine, mix it up and do it But there's nothing that we can put together as a crime Before this court I think that the co-appellant Quite nicely brought in Roseman In the Roseman case Seems to bring this thing In my client's case Is kind of the corollary of that There's no knowledge of the guns in Roseman Well there's no knowledge of the drugs The only thing is that Excuse Roseman Just so I understand how it fits into this Judge Lopez was asking the prior counsel Why Roseman has much to do with this case Because in Roseman You had a person going to a scene At which I think a gun then appears And one of the co-defendants unbeknownst And I think they don't even know which co-defendant had it But here they're together In the car, one with a gun, one with drugs So If they each had knowledge Of the other being there The question of With a gun and with drugs The question of advanced knowledge Wouldn't seem to be particularly relevant You could just, couldn't you infer From the presence of one with the other Well I don't think you can infer anything So say why not You can't infer possession from something that's in somebody else's pocket That even if you're in a car Or something like that It could be exposed and looked at as non-exclusive possession But there has to be some circumstance Or inference that shows that You knew about it, you were doing something That was obviously attuned to Playing with the drugs But there's nothing here And you know A Glock isn't a gun that's You have to have a big pose As if somebody's pregnant When they're carrying around a Glock A Glock is a fairly compact police weapon And you see it on most of the courthouse officers And it's something that could be slipped into Into your belt and not seen I mean you know What was the What was the evidence about the size of the magazine Well there was a There was a couple extra bullets in the magazine But just a couple extra bullets isn't A huge Protrusion Is this a magazine that tucks inside the handle It slides and is concealed inside the handle So I mean it's not like somebody's carrying around An AK-47 or some assault weapon It's a It's a pistol It's an automatic pistol It's a fairly compact size But certainly even more of a compact size Is the drugs secreted in somebody's pocket And I just think that there's There's not enough Where were the There's a reference in the record to baggies That are often used Those were also in the The stamp size baggies Okay and where were they found In his pocket as well Okay and the The thousand dollars plus of cash Also in the pocket So there's nothing to To indicate that my client Had any knowledge of that What about the The first way in which Your client reacted as soon as they were stopped The government Described what's in the record Is odd behavior of Immediately absenting himself From the vehicle Walking over to a wall Pulling out his cell phone And nervously Talking about There's something very odd about his behavior In the immediate aftermath of the stop One could call that odd Or one could call that normal If a police officer pulls over A couple guys in a car Tilted windows Maybe who knows what else was going on Maybe they had some music It's a place where somebody naturally Doesn't want to hang out And he walked down the street And Was using his telephone Nowadays people using Not using their telephone is somewhat odd If you look at people Sitting around in the coffee shop Everybody seems to be on their telephone You see somebody looking around And looking for somebody else That's pretty odd I don't think that really makes a circumstance That it's truly odd What's the relationship? They're brothers-in-law, is that correct? They're related, is that correct? Right, yeah A relationship like that shouldn't create A co-existence in the possession Of each other's pockets Two things has to be shown When you say the magazine Had two extra bullets How many bullets does A typical magazine have? This one had 24 And the government refers to it as an extended magazine Tell me what you know about the magazine The magazine That comes with the gun Has a I'm not I haven't looked Exactly at the number of bullets But this one could contain more But it doesn't make the gun Much bigger than a normal gun From the pictures I saw in the evidence So you're just going off the What I saw in the file Just to understand your Argument Even if Your client Had knowledge Of the gun and was aware of it Obviously my client I'm sorry, if your client had knowledge If the other defendant Had knowledge of the gun You're still claiming That There's no nexus Between that gun and the drug crime Let's assume the gun was large Well then there's nothing For my client to show that he knew Of the drugs Well let's assume your client knew of the drugs too So let's say both knew In that instance It would be a different case then Well why? I thought you would still Have no evidence That either one was In furthering Using the gun in furtherance of the drugs Or is it your view that as long as both Of them knew about what the other one Was doing The charge of in furtherance Would have a sufficient basis Well Yes No There are no drugs here to begin with I know sham drugs Can be used Certainly They can be used as drugs In terms of research Stings and other cases But I think there's nothing In the record To show possession in furtherance The logic of your argument Seems to be that in order to prove The sort of in furtherance element There has to be some evidence That the gun is actually being used In some way That it's perhaps brandish Which is actually a Can be a distinct element In these cases Right That seems to be If somebody is found Simply with the gun On their person Even though A drug transaction Is taking place In your view that's not enough Just mere having it on your person From the course of a drug transaction Is not enough There has to be some evidence That it was actually used in some way To further the transaction Is that your position Some nexus yes There has to be some nexus Between the gun and the drug transaction So do you There's two possible meanings of that One would be you actually have to display the gun In some direct way The other would be that you have to Have the gun with you For the purpose of assisting In the trafficking Maybe because you think you will use it If it's needed to be in defense or something Those are two very different ideas Which of them is the position Or is it both Or either one suffices I think either one would suffice And the contention is here You have neither All you have is just the possession of the gun itself Possession of the gun And my guy pled guilty to that The drugs he had no knowledge about There's nothing in the record No circumstance, no inference No advanced knowledge, no advanced mens rea Nothing that we can prove from the record Things that may have happened in the past Because their brother-in-law is rank speculation But if you read the case And if you look at the activities And even when counsel says Was there any other reason why you stopped this car No, that's clearly on the record And it was just a stop For the window violation And these other things came out And the drugs were found here The gun was found there But there's no way to tie my client Together with the drugs In order to prove that he used his gun And furtherance of that drug crime Does the Quantity of the drugs on the Codefendant's person Suppose he had a Much larger quantity of drugs On his person Sounds to me like your argument would still be the same Is that correct There would be no way to Connect your client To the codefendant In terms of his knowledge Of in this case the much larger quantity of drugs You would still say there's not enough evidence To show that he had Knowledge of that much larger quantity of drugs Would that be your position That would be my position Especially under the circumstances of this particular stop I mean it could even work with a trunk load of pure cocaine I mean there still is no Connection when they stop him for the Dark windows And find that as an after Aftermath There's nothing to connect The passenger to it It's a non-exclusive possession case With no circumstance or inference To prove that Mr. Rodriguez had any Connection or knowledge of it Thank you Thank you so much Good morning Assistant United States Attorney Denise Longo For the appellee in this case As to Mr. Santini's argument It is correct That We must point out that he admitted The drug trafficking crime He admitted The evidence in the record is that he admitted After being arrested That he possessed The Sham cocaine For the purpose of distribution that he had gone and purchased At a public housing project And that he intended to Distribute it And so basically As to the drug trafficking crime He admits that he was engaged in that drug trafficking crime So as to his liability under the 924C For count 3 It comes from the fact that he was As developed in the record Sitting in this vehicle The driver and or controller of this vehicle Where the passenger was carrying this gun The gun itself Can I just ask you Suppose he was at his home Just sitting at his home He has the same amount of drugs in his pocket And the doorbell rings And the person with the gun Is at the door At that moment when the person walks in With the gun Is there sufficient evidence to show that the gun Is in furtherance of a trafficking crime Your Honor The question has to do with knowledge In this case in particular The knowledge is developed through the conduct Of the individuals In other cases We've had the same issue with Boat captains Is more akin to the situation Where the boat captain is in the boat And they have drugs and they have guns And they're all secreted in secret compartments And the court has held Under 924C The mere presence of the gun In that boat Which is a vehicle Is in furtherance of a drug trafficking crime Because of the nature of the gun We understand that And this is how it was presented to the jury Just going back to my hypothetical In the house it's the same thing We have had the cases in the house It's the same thing  But there was a case where the gun was secreted With weapons in a compartment Just on my hypothetical Because I want to get as close as I can To the car situation and see why it's different All the person has Is he has drugs Same kind of drugs that Santini Has claimed to have here in his pocket He's in his house The doorbell rings The person is let in It's his brother-in-law His brother-in-law has a gun on him Same size gun under his belt At that moment is there sufficient evidence To say that the gun is in furtherance Of the trafficking Well we would argue that maybe not in the moment that he comes in But let's say that he comes in And I see him carrying this weapon And we sit down and decide to get together In the vehicle and start driving At that point yes Because Mr. Santini takes Mr. Rodriguez-Martinez Into his vehicle And drives with Mr. Rodriguez-Martinez In the vehicle with him And what was presented to the jury and the evidence Is correct that it is circumstantial But it's patently clear that this is a weapon That was the size of a weapon That the knowledge by Mr. Santini Of the presence of the weapon in the car Was evident Not only because of the size of the weapon Why do you say that? Why was it so evident? Not only because of the size of the weapon But because of the conducts of the two individuals The evidence presented at trial Was that the police officers Did this normal traffic stop And when they approached the vehicles First Mr. Rodriguez-Martinez Who is the passenger Gets out of the vehicle Which the agents understand and react normally Usually you do a traffic stop The police officer is going to intervene with the driver There really is no reason for the passenger To react because it's a traffic stop If you're carrying an illegal gun They might be a little bit concerned about the stop So clearly That's part of what was presented to the jury Because when he gets out of the vehicle Mr. Rodriguez-Martinez gets out of the vehicle He is nervous in his demeanor But how does that show anything about The knowledge of the drugs? Well, the other thing is that the record also reflects That Mr. Santini-Mendez Mr. Santini-Mendez also Suosponde by himself got out of the vehicle Not at the request of the police officer, but both So they both engaged in the same behavior Of trying to separate themselves From the vehicle and from each other So that's what The totality of the circumstances In this case is. This is a case It is correct. It was a traffic stop There was no prior intelligence As to the fact that these individuals were involved in drug trafficking It is a traffic stop Where the agents respond to the facts As they have in front of them And that was what was presented to the jury For the jury to make a reasonable analysis As to whether or not the behavior And conduct of these individuals Pointed to the fact that they were Acting in concerted action In this case in particular, we argue As to Mr. Santini-Mendez One, that he admitted that he was engaged in drug trafficking So he admits the underlying offense And then as to the 924C That the nature of the gun And the behavior of Mr. Rodriguez-Martinez And Mr. Santini-Mendez himself At the time of the traffic stop Foretells the fact that they have Knowledge of each other's conduct Mr. Rodriguez-Martinez, for example He steps out of the vehicle And is trying to separate himself The indication of the jury was that he was limping Or acting in a way as to try to conceal The weapon The weapon itself is presented And I think that there's a PowerPoint That was presented to the jury That is in the record Is a weapon with an extended magazine It's not the normal magazine that comes With the weapon, it's a larger magazine It's a 30-bullet magazine That had 24 bullets So it really is a more cumbersome Item to carry, it is not an easily Concealable weapon So it sticks out below The bottom of the handle It sticks out beyond the handle, that's correct So it's And it's cumbersome So is the key to the inference That you're saying Would suggest that they were Working jointly In some way That he was aware of the gun being On Rodriguez's person When Rodriguez entered The car The position In the inference is that When Mr. Rodriguez was in the car No, I know that, but is it You said earlier when I was asking That they went into the car together And I guess I could understand that If the theory is that They're jointly walking into the car together One has drugs, he knows the guy walking Into the car has a gun with him Is that crucial to the government's case? It is crucial to the government's case So if we didn't think that the record Showed that there was evidence That he would have known Rodriguez had the gun when he entered the car Is there sufficient inference That we can draw from the fact that Once in the car it might have been possible To see while he's sitting there The gun extended? We would argue one that While he got into the car, but the other thing is that From the evidence presented They made admissions or indicated That they had been at the hardware store And that they had gone together to the hardware store And were coming out of the hardware store There were no bags recovered From the hardware store So that was presented as evidence to the fact That they were being less than truthful It goes together With the fact that it was presented to the jury That when Mr. Rodriguez Martinez got out of the vehicle He sort of waved and said goodbye He pretended he was Let me take advantage of the traffic stop to leave But also it was presented to the jury In the photos in Exhibits 3, 4, and 8 Was that this traffic stop Was 60 feet From the parking lot From where they were exiting So it wouldn't make any sense for an individual That's leaving the hardware store Where we went to buy some items And then coming back And as soon as there's a traffic stop I get out and pretend to leave And get out So it is the totality of the circumstances As they came out That create the sufficient information Or circumstantial evidence For a reasonable fact finder To develop That they had knowledge Of each other's activities How did the government Present the case In terms of where the Glock Likely was While Rodriguez was still in the car Tucked into his trousers Or did you get into that? We didn't get into the fact As to where it was while in the vehicle Because we did not have any direct evidence Of that So how did you make the constructive Possession argument if you didn't know where it was In the vehicle? We made it based on Showing it to the jury And its cumbersome nature And the fact that when he stepped out of the vehicle He did have it secreted in his person So the theory was That it was tucked into his trousers While he was in the car Or that it would have been in his person And because of the close proximity This is a Honda Accord It's a small vehicle And Mr. Santini-Mendez himself is a large individual So they were Elbow to elbow With each other And Mr. Rodriguez-Martinez was carrying This large weapon with him Either secreted The argument was that it would have been Very difficult for him to actually have it concealed While he was sitting Because of the nature of the gun So that really he would have had it on him Because it would stick up Or just that you wouldn't Expect someone to have it Tucked in Because of the nature of it So if it's not tucked in What did the defense say about whether it might have been in the back seat? I don't think That it was argued to that effect After my review of the record Under the front seat, anything? It wasn't presented Or argued in that way Because it was admitted that he had it on his person When he came out of the vehicle And that he was trying to secret it in his person Yes, but I'm just trying to understand The constructive possession argument Well, the constructive possession For Mr. Santini's argument was that the size And nature, but also the nature of the gun I think what was shown to the jury Was that this is also not a weapon That is for personal security Because it is a large weapon I know, I know But with respect to constructive possession You have to show dominion and control On the part of the driver, Santini If the gun is under the front seat And he doesn't know about it Then it makes it a tougher case That is correct But in this case, the way that it was presented Is that Mr. Santini was the driver of the vehicle And was the person in control of the vehicle It was actually a vehicle that was not owned By either of the defendants So it was presented as That Mr. Santini as owner of the vehicle And the person with presumed control And possession Also the close proximity Because no matter where it would have been It would have been within his reach And control In the front area of this Honda Accord Where they are both riding And evidently Mr. Rodriguez Martinez Had to have had it in his person In order to step out with it concealed in his person If The The co-defendant Was concerned About being found With a gun on his possession If the gun was Someplace else in the car In the back seat Under the front seat It would seem unlikely When he absents himself from the car That he would grab the gun From the back seat Or from under the front seat And put it on his person And then get out of the vehicle That would be very Counterproductive from his point of view Would it not? That suggests arguably That he had it on his person the whole time The whole time And the other thing is that it suggests That they would have had to know That it was there The presentation to the jury was The conduct of both defendants At the same time at the moment of the traffic stop What did it convey To the officers Because it was also in the testimony of the officers That it was the totality of the circumstance One of the points is that The officer says that when he was Receiving Mr. Rodriguez Martinez He was standing behind the vehicle Surveying both defendants And he sees the conduct and reacts So a lot of it has to do with Just on the conduct itself So I understand The conduct that you are suggesting Shows a nexus between the drugs And the gun Is that the two passengers Each of which was in possession Of an illegal contraband Exited the vehicle They both stepped out of the vehicle Once the traffic stop stopped And that's the evidence of the nexus between the two things Well because we argue that it is The evidence of consciousness of guilt But the consciousness of the guilt is of their contraband I would think Why is that evidence of consciousness of guilt Of a joint enterprise of any kind I don't follow that Because we would argue that for Mr. Rodriguez Martinez When there is a traffic stop They argue to the jury When the traffic stop occurs The police officer is going to intervene With the driver exclusively The only thing is that And the important thing is that Mr. Rodriguez Martinez knows that Mr. Santini has drugs in his pockets And has to know and perceive That if he gets arrested Then everybody is getting arrested And they are going to find my gun So that Consciousness, that forethought Of the fact that they are intervening with him And he only has cash A thousand dollars in cash and drugs Which is what he is using for his drug trafficking But if he gets arrested Then the whole car gets searched And everybody gets searched and my gun gets found So that's why they are both Attempting to physically remove themselves From each other so that they can remove One item away from the other And it is that totality Of the conduct that is being presented It was fairly clear From the agent's testimony That what they reacted to Was to Mr. Rodriguez Martinez's nervousness That they were not going to intervene with him Until he gets out of the car And pretends to leave And goes and stands by the corner The jury had an opportunity to see the photos Of the location. This is a rural location There would be no reason For Mr. Rodriguez Martinez to get out of the car And step in that area The photo itself shows that it was just bushes And there was like a creek So he wouldn't go anywhere At the place that he Chose to get out of the car How was the gun detected by the officers? Did it... I don't get the impression that when Mr. Rodriguez stepped out of the vehicle That the gun was immediately apparent To the officers. Is that correct? That is correct. What they indicate is that When they saw him that he was sort of limping That he was trying to conceal the weapon They both were wearing t-shirts And there were photos shown to the jury They had t-shirts and I think they both had shorts And he said that he was limping And trying to conceal with the t-shirt The gun in his person So that there was a weird Gate That sort of projected And then it just fell to the ground. Is that correct? The gun just fell to the ground? No, it didn't fall to the ground The second officer, Officer Abreu Patted him down and then took it And put it in the floor And that's when the officer that was testifying Sees it Because he sees the actual gun for the first time When the other agent puts it in the floor That's what the record says So during the pat-down Phase The officer did not see the gun? They approached him They turned him around Remember he was in a weird gate They turned him around And then they do an immediate pat-down Pick it up and put it in the floor It's a matter of seconds It's an immediate process The police officer is the one who actually removes the gun and puts it on the floor? But there were two police officers There was Officer Melendez who testified Who was the one that was intervening with Santini Speaks to him Santini had gotten in the car and he said Okay, go get the papers Because Santini said it's not my car, I don't know I don't have the papers And while Mr. Santini is looking for the papers That's when the police officer removes himself Behind the vehicle and starts looking And sees Rodriguez Martinez So then they go towards him And he goes with his partner, Abreu There's testimony on the record that Melendez Looks at Abreu and says Do you see what I'm seeing? And then they both approach him So the pat-down is conducted by two officers Sort of at the same time Officer Melendez moves him And Abreu does the pat-down And then finds and puts So the officer that testified Melendez was not the one who removed the weapon Just so I get it, the only way the gun Was identified was through the pat-down? Yeah, that's the only time That it was seen, physically seen Well that's not helpful To the government's position That the gun must have been apparent To Mr. Santini If the officers themselves Could not see The gun on Mr. Rodriguez's person Absent a pat-down It's different when you're sitting down Than when you're standing up And using a t-shirt to try and conceal Something that you have Secreted in your waistband It was argued that Mr. Rodriguez Martinez Would have been sitting in the car Would not have had the same opportunity To use the large t-shirt around him To conceal it, so that was presented to the jury Like I said, there were photos shown Of what they were wearing that day To the jury And It was that behavior That gave them The marks, the agent testified That they reacted to the behavior It is that consciousness of guilt That we believe was the subjective Evidence in this case So Santini gave a statement Where he said where he bought What he thought was cocaine That's correct Does he say anything about when he picked up his brother-in-law? How long Between the time that he purchased the drugs And they were stopped, any of that? There's no record There's no evidence in the record As to when he picked up the guns I mean the cocaine We don't have a time span as to how long it had been in his possession And there's an indication That they went to the hardware store together And that The allegations that they went to the hardware store together And they were coming out of the hardware store together And that was one of the things That was presented to the jury That it is unusual for you To walk with that type of weapon You know Into a hardware store Why would you be carrying that in a hardware store run? That it would have been unusual And that the nature of the gun itself Is what leads to The fact that it was there In furtherance of the drug trafficking crime As stated And as shown in the record Mr. Santini had the drugs He had what he thought was cocaine At least 10 grams He had 10 glassine bags That would match the ability to make that into Substances for distribution Which he indicated he wanted to distribute And then Mr. Rodriguez-Martinez Had this weapon Which was a Glock with an extended magazine 24 bullets, fully loaded When it was recovered it was loaded It wasn't being transported separately It was being transported ready to fire So that those facts And the conduct of these individuals At the moment that the traffic stop takes place Is what leads to the fact that They were acting in concerted fashion So it's conceivable right That they actually did go into the hardware store He wasn't carrying the Glock When he was in the hardware store He actually put it under the front seat of the car Santini never saw him put it under the front seat of the car When the traffic stop occurred Rodriguez says to Santini I've got a gun, it's under the front seat of the car Even though you didn't know that Santini says get the gun and get out of here That's all conceivable right But that's for a jury to decide We understand that that would be for the jury to decide Whether they believe that he would not have known Ahead of time due to their behavior Counsel do you want to say a brief word About the jury instruction issue I know that appellants did not raise it here This odd language in the instruction Where the court refers to someone else Perhaps including a co-defendant That they might have been helping What could that What could that language possibly mean Someone else I think that it was drafted with the intent That the jury Understand that they didn't have to personally do it That the other person could be the person Carrying that it has to do with the concept Of constructive possession It was added as a way to Put in the aiding and a better Liability and as we argued in our brief You know we understand that it tracks The language of the instructions The Hornby instructions With the intent of creating that It really is to I think to convey to the jury the concept That you don't have to possess it It was aiding and abetting Somebody else having it You know just not an intent that it would be a third party But with the knowledge The jury would have to make a determination As to having some evidence As to who that someone else would be And in this case there is only evidence As to these two individuals being So we do not believe that the language itself Would create any confusion In the jury or would not allow it To reach a reasonable determination In the case Thank you